UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK JEFFERS, ON HIS OWN BEHALF AND ON BEHALF OF ALL THOSE SIMILARLY SITUATED, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 12 C 8522 |
| v. | ) ) ) | Judge Thomas M. Durkin |
| AMERIPRISE FINANCIAL SERVICES, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frank Jeffers alleges in a Second Amended Complaint that he purchased stock in Inland Western Retail Real Estate Investment Trust ("Inland Western"), a Maryland-incorporated real estate investment trust ("REIT"), on the recommendation of his financial adviser, defendant Ameriprise Financial Services, Inc. ("Ameriprise").[1] On his own behalf, and on behalf of a putative class, Jeffers alleges that Ameriprise breached its fiduciary duties to its clients by, among other things, failing to: (1) disclose its financial relationship with Inland Western; and (2) independently evaluate Inland Western's statements about the company's performance and value. Ameriprise has moved to dismiss Jeffers's complaint with

---

[1] Inland Western changed its name to Retail Properties of America, Inc. on March 8, 2012, shortly before the end of the time period relevant to this lawsuit. *See Sadler v. Retail Prop. of Am.*, Nos. 12 C 5882 *et al.*, 2014 WL 2598804, at *1 n.2 (N.D. Ill. June 10, 2014). For ease of reference, the Court will refer to the company as "Inland Western" throughout this opinion.

prejudice as untimely and inadequately pled. For the following reasons, the Court grants Ameriprise's motion.

## BACKGROUND

**I. The Court's June 10, 2014 Opinion Dismissing Jeffers's First Amended Complaint.**

Jeffers's case was originally one of five related putative class actions filed by plaintiffs seeking compensation for losses they suffered on their Inland Western investments. *See Sadler*, 2014 WL 2598804, at *1. All five cases asserted claims against Inland Western and certain of its directors and officers ("D&Os"); only Jeffers asserted claims against Ameriprise. *Id.* On June 10, 2014, the Court held that the plaintiffs in each case had failed to state a claim for relief against any defendant. *Id.* at *24. The Court dismissed with prejudice all claims against Inland Western and the D&Os on three main grounds: (1) the plaintiffs lacked standing to assert breaches of fiduciary duty that the D&Os owed to Inland Western, *id.* at *11; (2) the plaintiffs' allegations failed to overcome the presumption that the D&Os had "acted on an informed basis, in good faith[,], and in the honest belief that" their actions were in the company's best interests, *id.* at *16 (quoting *Boland v. Boland*, 31 A.3d 529, 548 (Md. 2011) (internal quotation marks omitted); and (3) the parties' written subscription agreements foreclosed any equitable remedy for unjust enrichment, *id.* at *20. Jeffers's First Amended Complaint ("FAC") asserted four counts against Ameriprise: (1) breach of fiduciary duty, *id.* at *16-19; (2) unjust enrichment, *id.* at *21; (3) violation of the Illinois Securities Law of 1953 ("ISL"), *id.* at *22-23; and (4) violation of Ameriprise's duties under Financial Industry

Regulatory Authority ("FINRA") rules and regulations, *id.* at \*23-24. The Court dismissed Jeffers's breach-of-fiduciary-duty claim because he had not adequately alleged that Ameriprise's actions proximately caused his losses. *Id.* at \*19. Alternatively, the Court held that Jeffers's fraud-based allegations did not satisfy Rule 9(b)'s heightened pleading requirements. *Id.* Jeffers's tag-along unjust enrichment claim, based on the same allegations, failed for the same reasons. *Id.* at \*21. The Court held that the ISL's then-applicable five-year statute of repose barred Jeffers's securities-fraud claim. *Id.* at \*22; *see also id* at \*23 (holding in the alternative that the complaint's allegations failed to satisfy Rule 9(b)). In doing so, the Court rejected Jeffers's attempt to bootstrap his untimely claim to the purported claims of unidentified "Ameriprise customers":

> The *Jeffers* complaint alleges that the Plaintiff class purchased shares through Ameriprise at $10.00 per share between March 2004 and September 2005. *Jeffers*, R. 21 ¶ 37. The complaint was not filed until 2012, seven years after the proposed class purchased their shares. To counter this stark fact, the Plaintiffs argue that their complaint contains allegations that Ameriprise solicited and sold shares of the REIT all the way up to 2012, that between 2009 and 2012 Ameriprise engaged in Account Statement Identifier Deception (ASID), and that members of the class continued to reinvest their dividends to acquire additional shares of the REIT. *Jeffers*, R. 52 at 11. But a careful reading of the complaint demonstrates that the Plaintiff class does not allege that *anyone in the class* purchased stock any time after 2005— i.e., they do not connect *their own* personal investing activity to anything related to Ameriprise after the sales in 2004 and 2005. *Compare Jeffers*, R. 21 ¶ 37 (Plaintiff initially purchased 8,460 interests of [RPAI] at $10.00 per share."), *with id.* ¶ 82 ("Ameriprise *customers* were induced into purchasing . . . shares of the REIT from 2004 to 2012.") (emphasis added).

*See id.* at \*22 (emphasis in original). Finally, the Court dismissed Jeffers's FINRA claim with prejudice because he had not shown that FINRA's rule and regulations

contain an implied private right of action. *Id.* at *24. With respect to his other claims, the Court gave Jeffers leave to file an amended complaint if he believed that he could correct the deficiencies that the Court had identified. *Id.*

## II. The Second Amended Complaint

Jeffers's Second Amended Complaint ("SAC") is substantially similar to his FAC. He does not pinpoint a particular purchase date, but the Court again infers that he and other putative class members purchased Inland Western stock at some point during the company's initial offering (March 2004 to September 2005). R. 78 ¶ 14; *see also Sadler*, 2014 WL 2598804, at *22 (construing the identical allegation in the FAC to mean that Jeffers purchased Inland Western stock at some point between March 2004 and September 2005). Ameriprise prepared private placement memoranda ("PPMs") in connection with that offering and "other selling materials and pitches" approved by the D&Os. R. 78 ¶¶ 22-23, 75. According to Jeffers, the PPMs contained "inconsistent," "misleading," and "inaccurate" statements regarding: (1) expected investment returns; (2) interest payments; and (3) the company's intended use of the investment proceeds. *Id.* at ¶¶ 23-24. Jeffers alleges that an Ameriprise agent, Judy Vicks, told him "shortly before [he] made [his] investment" that: (1) Inland Western "'was a fantastic investment' and that he 'couldn't go wrong' by investing [in the trust] since it was real estate"; and (2) the company "was yielding '10-12% returns.'" *Id.* at ¶ 95. Ameriprise did not disclose to investors that Inland Western had paid Ameriprise to solicit investments. *Id.* at ¶¶ 25-26. It also failed to disclose the fees that it charged its clients in connection with

their Inland Western investments, including a 1% "due-diligence fee." *Id.* at ¶¶ 78-81. Notwithstanding this fee, Jeffers alleges that Ameriprise did not independently evaluate the investment. Instead, it relied entirely on information that the D&Os provided. *Id.*

Jeffers's investment in Inland Western was essentially illiquid for most of the time period relevant to this lawsuit. *Id.* at ¶ 61. After the company suspended its share repurchase program in November 2008, shareholders who wanted to sell their stock had "to find a buyer for their shares in a thinly-traded secondary market or accept a tender offer." *Id.* Jeffers alleges that Inland Western's shareholders received three such offers from CMG Acquisition Co., LLC ("CMG"). CMG initially offered to purchase Inland Western shares on December 21, 2009 for $1.50 per share. *Id.* at ¶ 63. Inland Western's Board of Directors (the "Board") advised shareholders not to accept the offer based upon the company's own estimate of the stock's value ($6.85 per share as of December 31, 2009). *Id.* at ¶ 65. On December 10, 2010, Inland Western filed a proxy statement with the SEC announcing that the company intended to ask its shareholders to approve an initial listing of the company's stock and a "recapitalization," which if approved would entail a 10-to-1 reverse stock split. *Id.* at ¶ 68. Inland Western told investors that the reverse stock split would not affect the value of their holdings: they would own fewer shares, but those shares would be worth more money. *See Sadler*, 2014 WL 2598804, at *3-4 (citing the company's SEC disclosures). Several weeks later, the company estimated that "each share of Inland Western . . . would be valued at approximately $17.125

after the stock split and [r]ecapitalization." *Id.* On February 4, 2011, 94.8% of Inland Western's shareholders voted in favor of publicly listing the company's stock and adopting the recapitalization plan. *Id.* at ¶ 69. On May 27, 2011, CMG made another tender offer, this time at $3.00 per share. *Id.* at ¶ 63.[2] Within a month after CMG's renewed offer, Inland Western increased its estimated per-share value from $6.85 to $6.95. *Id.* at ¶ 66. CMG made a third tender offer on October 27, 2011, of $3.50 per share. *Id.* at ¶ 67. The Board advised shareholders to reject the offer because it "believe[d] that the value of Inland Western shares exceed[ed] the offer price." *Id.* at ¶ 67.

On March 21, 2012, shortly before Inland Western announced pricing details for its IPO, Ameriprise participated in a conference call with Inland Western "to address how the share would be priced after the reverse stock split and stock dividend in anticipation of" the IPO. *Id.* at ¶ 69. The SAC alleges that Ameriprise relayed Inland Western's statements to its clients, although it is unclear when or how. *Id.* According to Jeffers, Ameriprise told investors that Inland Western's "management would not confirm the valuation on the call, [but] it did state that there was no material change in the REIT's financial condition and essentially agreed it was reasonable for Ameriprise to use the $17.375 valuation . . . ." *Id.*[3] On March 23, 2012, Inland Western filed a registration statement with the SEC stating that it intended to offer 31,800,000 shares of stock at an anticipated price of

---

[2] The SAC does not allege whether the Board advised its shareholders to reject CMG's $3.00 per-share tender offer.

[3] Presumably the increase from $17.125 to $17.375 per share was attributable to the company's revised estimate of its pre-split value (from $6.85 to $6.95).

"between $10.00 and $12.00 per share." *Id.* at ¶ 70. The company issued a revised estimate of $8.00 per share on April 5, 2012. *Id.* at ¶ 71. The public offering took place four days later, on April 9, 2012. *Id.* at ¶ 3. Jeffers alleges that, post-IPO, the "split-adjusted value of the stock is less than $3 per share." *Id.* at ¶ 73.

Jeffers claims that Ameriprise breached its fiduciary duty to him by: (1) "allowing [Inland Western] to disseminate materially misleading and inaccurate information to its customers through, *inter alia*, SEC filings and other public statements and disclosures"; (2) "failing to disclose hidden fees it was earning for selling" Inland Western stock; and (3) "failing to perform the required due diligence that its clients were paying for." *Id.* at ¶ 97. He furthers alleges that "[a]t some point between 2009 and 2012," Ameriprise changed the format of its monthly account statements in order to disguise the stock's poor performance. *Id.* at ¶¶ 85-89. His unjust enrichment claim is based upon the same allegations underlying his fiduciary-duty claim. *Id.* at ¶¶ 101-03.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).[4] In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## ANALYSIS

Ameriprise argues that the ISL's five-year statute of repose bars Jeffers's common-law claims because the ISL provides relief for the conduct that Jeffers has alleged. *See* 815 ILCS 5/13(D).[5] It also argues that the SAC's allegations—some of

---

[4] In his response to Ameriprise's motion to dismiss, Jeffers cites a hodge-podge of pre- and post-*Twombly* standards. R. 91 at 2. Contrary to his argument, Ameriprise is not required to show that "it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the [complaint's] allegations." *Id.* (citing *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir 2000)); *see Twombly*, 550 U.S. at 562-63 ("retir[ing]" the "no set of facts" formulation of the motion-to-dismiss standard).

[5] On August 5, 2013, the Illinois Legislature amended § 5/13(D) by removing the five-year statute of repose. *See* Ill. Legis. Serv. P.A. 98-174 (H.B. 2969) Public Act 98-74. The amendment became effective on August 5, 2013. *Id.* Jeffers effectively concedes that the change does not apply retroactively. R. 91 at 2-5.

which are identical to allegations that the Court specifically rejected in its prior opinion—are inadequately pled.

I. **Jeffers Cannot Recover Damages for Ameriprise's Alleged Conduct in Connection With His Initial Purchase.**[6]

The ISL makes it unlawful for any person:

> (F) To engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof.
>
> [. . .]
>
> (G) To obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.
>
> [. . .]
>
> (I) To employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly.

815 ILCS 5/12(F), (G), and (I). The version of the ISL in effect when Jeffers filed this lawsuit contained a five-year statute of repose:

> No action shall be brought for relief under this Section *or upon or because of any of the matters for which relief is granted by this Section* after 3 years from the date of sale; provided, that if the party bringing

---

[6] Jeffers argues that Ameriprise cannot assert the ISL's statute of repose in a Rule 12(b)(6) motion because it is an affirmative defense. R. 91 at 2-3. The Court may grant a motion to dismiss based upon a statute of limitation where, as here, the defense is apparent on the face of the complaint. *See O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("[I]f a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground."). The date Jeffers filed this lawsuit, October 23, 2012, is a matter of public record, and he alleges in the SAC that he purchased Inland Western stock at some point between March 2004 and September 2005. R. 78 ¶ 14. When Jeffers acquired "knowledge that he had a cause of action," R. 91 at 2-3, is irrelevant for purposes of the ISL's statute of repose.

the action neither knew nor in the exercise of reasonable diligence should have known of any alleged violation of subsection E, F, G, H, I or J of Section 12 of this Act which is the basis for the action, the 3 year period provided herein shall begin to run upon the earlier of:

(1) the date upon which the party bringing the action has actual knowledge of the alleged violation of this Act; or

(2) the date upon which the party bringing the action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act; but in no event shall the period of limitation so extended be more than 2 years beyond the expiration of the 3 year period otherwise applicable.

815 ILCS 5/13(D) (emphasis added). Courts have interpreted the emphasized language to extend the statute of repose to "claims that do not directly invoke the [ISL]." *Klein v. George G. Kerasotes Corp.*, 500 F.3d 669, 671 (7th Cir. 2007) (citing *Tregenza v. Lehman Bros., Inc.*, 678 N.E.2d 14, 15 (Ill. App. Ct. 1st Dist. 1997)). The plaintiff in *Klein* alleged that the defendants improperly forced him to sell his shares in a closely held corporation at a price that was based on a false valuation of the company. *Id.* at 670. He sued the defendants—the corporation and its officers and directors—for common law fraud, breach of fiduciary duty, and punitive damages. *Id.* at 671. The Seventh Circuit held that the ISL applies to claims by stock sellers. *Id.* at 673-74 ("To decide that sellers are not included under the [ISL] would require the court to disregard" language in the statute applicable to "any person" and "any party in interest."). *Id.* at 674. Because the plaintiff could have filed a claim for relief under §§ 5/12(F) and (I), *id.* at 672, the ISL's five-year statute of repose barred his common-law claims. *Id.* at 674; *see also Tregenza*, 678 N.E.2d at 14-15 (holding that the ISL's statute of repose barred the plaintiffs' claims for

"breach of fiduciary duty, fraud, and negligent misrepresentation arising out of the sale of the stock").

Jeffers acknowledges *Klein* and *Tregenza*, but argues that the Court should instead apply the Illinois Appellate Court's decision in *Carpenter v. Exelon Enterprises Co., LLC*, 927 N.E.2d 768 (Ill. App. Ct. 1st Dist. 2010). The plaintiffs in that case were minority shareholders in a company controlled by the defendants, which held a majority of the company's stock. *Id.* at 770-71. Using their control over the company, the defendants approved a series of transactions that required the minority shareholders to sell their stock on disadvantageous terms. *Id.* The plaintiffs sued the defendants for breach of fiduciary duty and civil conspiracy. *Id.* The defendants, citing *Klein* and *Tregenza*, argued that the claims were untimely under § 5/13(D). *Id.* at 773. The *Carpenter* court held that the ISL's statute of repose did not govern the plaintiffs' common-law claims because the ISL does not provide a remedy to stock sellers. *Id.* at 774-77. The point on which *Carpenter* and *Klein* disagree—whether sellers are entitled to relief under §§ 5/12(F) and (G)—is irrelevant in this case. Jeffers is suing as a purchaser of Inland Western stock, and the ISL plainly provides relief to purchasers. *See Carpenter*, 927 N.E.2d at 773 (distinguishing *Tregenza* on that basis).

The Court once again rejects Jeffers's attempt to skirt the ISL's statute of repose. Jeffers alleges that he purchased Inland Western stock in September 2005, at the latest—more than seven years before he filed his original complaint. At another point in his complaint, he alleges that "*Ameriprise customers* were induced

into purchasing . . . shares of the REIT from 2004 to 2012." R. 78 ¶ 80 (emphasis added). Construing the same allegation in the FAC, *see* R. 21 ¶ 82, the Court held that the alleged actions of "Ameriprise customers" did not affect the timeliness of *Jeffers's* claims. *See Sadler*, 2014 WL 2598804, at *22. In his response to Ameriprise's motion to dismiss the SAC, Jeffers relies on the same allegation to support his argument that his claims are timely without even acknowledging the Court's contrary ruling. *See* R. 91 at 3. Some of Jeffers's allegations are indistinguishable from allegations in a typical ISL securities-fraud complaint. Those allegations include: (1) misrepresentations and material omissions in the PPMs, R. 78 ¶¶ 22-24, 75-76; (2) Vick's optimistic statements about the company's performance and prospects, *id.* at ¶ 95; (3) Ameriprise's failure to disclose its financial relationship with Inland Western, *id.* at ¶¶ 25-26; and (4) Ameriprise's failure to disclose fees that it charged in connection with the sale, *id.* at ¶¶ 78-79. In fact, with the exception of Vick's alleged statements, these same allegations were the basis of Jeffers's untimely ISL claim. *See* R. 23-26, 77-78, 80-81, 120-21; *Sadler*, 2014 WL 2598804, *22-23. Jeffers cannot avoid the ISL's statute of repose by repleading his securities-fraud claim under common-law labels. *See Klein*, 500 F.3d at 674; *Tregenza*, 678 N.E.2d at 14-15. The Court concludes that § 5/13(D) bars Jeffers's common-law claims insofar as they are based on Ameriprise's alleged conduct in connection with his purchase of Inland Western stock.

## II. The SAC's Other Allegations Do Not State a Claim for Relief

Jeffers's complaint alleges some conduct that occurred within the five-year period before he filed this lawsuit. Specifically, Jeffers alleges that Ameriprise: (1) changed the format of its monthly account statements "[a]t some point between 2009 and 2012" to disguise Inland Western's losses, R. 78 ¶¶ 85-89; and (2) failed to discover Inland Western's true financial condition before it was revealed to investors in 2012.[7] Ameriprise argues that these allegations fail to state a claim for relief. The Court agrees.

### A. "Account Statement Identifier Deception"

Jeffers alleges that at some point between 2009 and 2012 Ameriprise added a column to its monthly account statements labeled "Beginning Value." R. 78 ¶ 85. According to Jeffers, this column is misleading because the term "Beginning Value" does not refer to the investment's original value when purchased. *Id.* at ¶ 86. Rather, it refers to the value of the asset as of the start of that month. *Id.* Jeffers's allegation that Ameriprise added the column to deceive shareholders is implausible. The phrase "Beginning Value" in a *monthly* statement—*see, e.g.*, R. 78-8 ("April 1, 2012 – April 30, 2012")—plainly indicates the value at the "beginning" *of that month*. Jeffers's argument that it actually suggests *original* value is idiosyncratic,

---

[7] Jeffers also argues that "after the initial offering, Plaintiff and other members of the class continued to invest their dividends to acquire additional shares of the REIT upon Ameriprise's advice and recommendation." R. 91 at 3. He raised this same argument in defense of his ISL claim in the FAC. R. 52 at 17. As Ameriprise pointed out in its reply in support of its motion to dismiss the FAC, Jeffers had not alleged any facts in that complaint that would support a claim against Ameriprise based on reinvested dividends. R. 60 at 10-11. There are no allegations in the SAC that would support such a claim, either.

at best. Whether or not Jeffers believes that this is useful information, Ameriprise did not breach its fiduciary duty by reporting it to investors. Even if the account statements were confusing, the purported harm to investors is far-fetched. Reasonable investors know what they've purchased and at what price. Ameriprise did not harm investors by failing to remind them of those facts on a monthly basis.

### B. Jeffers's Due-Diligence Allegations

Jeffers's allegations that Ameriprise "should have known" that Inland Western's shares were overvalued prior to the company's IPO fare no better. There is no basis in the complaint to infer that the company's internal valuations in December 2009 ($6.85) and June 2011 ($6.95) were false or misleading when they were announced. With respect to its December 2009 valuation, the company emphasized that it was an estimate, only:

> The estimated value was determined by the use of a combination of different indicators and an internal assessment of value utilizing a common means of valuation under the direct capitalization method as of December 31, 2009. No independent appraisals were obtained. As there is no established public trading market for our shares of common stock, this estimated value may not reflect the actual market value of your shares on any given date; and there can be no assurances that stockholders would receive $6.85 per share for their shares if any such market did exist, that the estimated value reflects the price or prices at which our common stock would or could trade if it were listed on a national stock exchange or included for quotation on a national system, or that stockholders will be able to receive such amount for their shares at any time in the future.

R. 78 at ¶ 65. Inland Western published the June 2011 valuation with similar caveats:

> Because this is only an estimate, we may subsequently revise any estimated valuation that is provided, and at a minimum, expect to

> revisit valuation as of September 30, 2012, unless Inland Western has completed or is in the midst of completing a liquidity event which may involve the listing of its current shares on a national stock exchange. Please note that Inland Western has previously announced that we intend to pursue the initial listing of our existing common stock on a national securities exchange. The estimated per-share value is only an estimate made solely for the purposes noted above and may not reflect the actual value of our shares or the price that a third party may be willing to pay to acquire our shares.

*See* "Frequently Asked Questions Regarding Estimated Value," dated June 20, 2011, available at http://www.sec.gov/Archives/edgar/data/1222840/00011046591 1035529/a11-15223_1ex99d1.html;[8] *see also* R. 78 ¶ 66 (quoting a portion of the just-cited filing). The company used this same $6.95 valuation to calculate the estimated per-share value of the company's stock after the 10-to-1 reverse stock split ($17.375). *See Sadler*, 2014 WL 2598804, at *3-4. Based upon the $6.95 valuation, the Board recommended that shareholders reject CMG's October 2011 tender offer. *Id.* at ¶ 67. The Court previously rejected Jeffers's "Monday-morning quarterbacking" in connection with his claims against the D&Os. *Sadler*, 2014 WL 2598804, at *13. Any valuation of an unlisted REIT is inherently imprecise, *id.*, a fact that Ameriprise disclosed to its investors in their account statements. *See* R. 78-7 (The issuer-provided REIT valuation "is not intended to reflect the value you may realize if the issuer liquidates the security or if you sell your interests."). The fact that Inland Western's shares were worth less in the market than anticipated does not establish that the company's earlier estimates were unfounded. *Sadler*,

---

[8] The Court may consider publicly-filed documents in connection with Ameriprise's motion to dismiss without converting it into a motion for summary judgment. *See Sadler*, 2014 WL 2598804, at *1 n.4 (collecting cases).

2014 WL 2598804, at *13. The Court made these observations in the context of the D&Os' business-judgment-rule defense, *id.*, but the same reasoning supports dismissal here. It would be pure speculation to suppose that Ameriprise would have valued the company at or below the tender-offer prices if it had "independently" evaluated the company. The fact that the shares were valued at $3.00 on the open market six months after the last tender offer does not support a reasonable inference that Ameriprise breached its fiduciary duty to Jeffers and other putative class members.

The SAC also fails to adequately allege that Ameriprise's conduct proximately caused Jeffers's loss. In response to the Court's opinion dismissing his claim for failing to adequately allege proximate cause, Jeffers added the following conclusory allegation:

> Plaintiff and the proposed class would not have purchased the REIT but for the conduct of Defendant Ameriprise, thereby incurring actual loss and damage in the form of each investor's losses, commissions paid, and opportunity costs.

R. 78 ¶ 99. It is insufficient to allege that Jeffers would not have purchased the stock—and thus would have not have lost money when the stock turned out to be unprofitable—but for Ameriprise's conduct. *See Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683 (7th Cir. 1990) (rejecting the plaintiffs' argument that it was "enough to allege that they would not have invested but for the fraud; for if they had not invested, they would not have lost their money, and the fraud was therefore the cause of their loss"). It is apparent that Jeffers has not sufficiently alleged that Ameriprise's conduct caused his losses because he cannot. The fact that his response

brief does not even cite, much less analyze, the Court's prior opinion reinforces this conclusion. The Court concludes, therefore, that dismissal with prejudice is warranted.

## CONCLUSION

The Court grants Ameriprise's motion to dismiss, R. 87. This case is dismissed with prejudice.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: March 31, 2015